**SCHLAICH et al. v. ROBERTSON, Commissioner of Patents (two cases).**

District Court, D. Maryland. June 8, 1928.

Nos. 1258, 1259.

1. **Patents ⊚—20—Result following reduction in size, converting failure into success, may constitute invention.**

A result followng from a reduction in size, which converts failure into success and involves something more than a matter of degree, may constitute invention.

2. **Patents ⊚—20—Claims covering corrugated capillary tubing for thermometers and instrument incorporating tubing and methods of manufacture held patentable.**

Claims of patent covering corrugated capillary tubing for thermometers and other instruments and instrument incorporating tubing and methods of manufacture *held* patentable.

3. **Patents ⊚—72(1)—Claims for methods of manufacture of capillary tubing for use in thermometers and like instruments held properly rejected, in view of prior patents.**

Claims of patent, calling for a combination or a pair of rolls, shaped to deform the tubing for use in thermometers and like instruments fed between them, and casing-holding means mounted adjacent to rolls, *held* properly rejected, in view of prior patents.

In Equity. Two suits by Herman Schlaich and another against Thomas E. Robertson, Commissioner of Patents. Decrees in accordance with opinion.

Edmund Quincy Moses and Albert C. Nolte, both of New York City, for plaintiffs.

Amos W. W. Woodcock, U. S. Atty., of Baltimore, Md., T. A. Hostetler, Sol. U. S. Patent Office, of Washington, D. C., and J. F. Mothershead, Asst. Atty. Gen., for defendant.

SOPER, District Judge. The plaintiffs in this case have brought two equity suits against the Commissioner of Patents, under R. S. § 4915 (35 USCA § 65; Comp. St. § 9460), to compel the issuance of letters patent upon two applications filed in the Pat-

ent Office and therein denied. The decisions of the Patent Office were affirmed by the Court of Appeals of the District of Columbia which declared, without discussion, that it was not convinced that the Patent Office was wrong, and therefore would not disturb its findings upon a highly technical subject. Herman Schlaich, one of the plaintiffs, is the applicant for the patents, and the Motometer Company, Inc., the other plaintiff, is his exclusive licensee. The invention in the first case relates to the manufacture of small tubing, of substantially capillary bore, adapted for use in thermometers of the distance type, or for other similar purposes, where a fluid-filled transmission tube may be employed. The second invention is designed to provide an instrument comprised in part of such tubing for the indication of temperatures in connection with the internal combustion motors of aeroplanes or other vehicles.

The gist of the invention, so far as this litigation is concerned, is the production of capillary tubing of the smallest possible bore, so as to secure accuracy in the measurement of temperatures in instruments of the distance type. A bulb containing fluid is located in such an instrument at the point whose temperature is to be ascertained, while the recording device is placed at a distance therefrom. Communication between the two points is established by a tube of considerable length, which is also filled with fluid. Since the connecting tube may not be subjected to the same temperature as the bulb, it follows that, the greater the volume of the liquid in the tube, the greater the error in the registration of the temperature of the bulb. In other words, the temperature at the point at which the bulb is located will not be accurately registered on the dial, because the latter will be affected by the change of pressure in the connecting tube. One way to avoid the error, or reduce it to a minimum, is to make the connecting tube so small that the expansion or contraction of the liquid therein will not materially affect the reading of the instrument. The manner in which this had been most efficiently done, prior to Schlaich, is shown in the patent to Hodgkinson of June 3, 1913, upon which the tribunals of the Patent Office chiefly rely for the rejection of the patents in suit.

Hodgkinson used a drawn metal tube, but found that it was impossible to reduce the caliber of its bore to anything like the bore of the ordinary glass thermometer stem, and at the same time maintain its uniformity. He therefore used a capillary metal tube having the smallest bore practicable, for example, a steel drawn tube of seven thirty-seconds of an inch external diameter, with a bore of approximately twenty-one thousandths of an inch, and slipped into this tube a wire of as large a diameter as could be forced into it by hand. Thereby the cross-sectional area of the tube and the volume of the liquid therein were very materially reduced.

The Hodgkinson method was known to Schlaich, and was referred to in the specification of the tubing patent. Schlaich pointed out, however, that the method was not satisfactory, because of the difficulty of inserting the wire. In place thereof, Schlaich reduced the volume of the tube by reshaping it. He subjected it to external pressure between rolls, so as to compress or squeeze it, producing grooves or corrugations. The result was that he obtained tubing of a capacity or cross-sectional area not only much less than that found in the smallest commercial drawn tubing, but much less than the capacity of such drawn tubing when provided with a filling wire. The new tubing possessed the additional advantage that it could be readily bent without closing the opening. Drawn or flattened tubes, formerly made, not infrequently closed up at certain points and became useless when they were bent.

The qualifications and experience of the inventor in the art, and the manner in which the invention was made, throw considerable light upon the question of patentability. Schlaich was an experienced man in the instrument art, having had some 20 years' experience in the manufacture of heat indicators. For 8 years he was connected with the Schaeffer-Badenberg Company, the oldest manufacturers of such instruments in the world, and for 12 years with the Motometer Company. He was associated with the last-mentioned company in 1917, when this country entered the Great War. His employer was requested by the Army and Navy to develop a heat indicator for aeroplanes which required a much longer tube and much closer calibration than had been necessary in the manufacture of heat indicators for automobiles upon which, up until that time, the Motometer Company had been engaged. To fill this order Schlaich first made an instrument equipped with plain capillary tubing of the bore of fifteen-thousandths of an inch, containing a wire ten-thousandths of an inch in diameter. In other words, he used the Hodgkinson system. The instrument, however, was rejected by the Bureau of Standards, because the tube area and the inaccuracy of registration were too great.

The device was also objectionable because of the difficulty of manufacture. It was not possible to secure quantity production by introducing a wire. The next experiment of Schlaich was to flatten out or crush the tube between two rolls. This attempt failed, because the tubing closed up entirely at certain points whenever an attempt was made to roll it flat enough to reduce the bore to the small dimension required. Furthermore, coiling of the wire for installation in an aeroplane affected the reading of the instrument, since it acted to some extent like the Bourdon tube hereinafter described. The result of this experiment was so unsatisfactory that no sample was submitted to the government. The final and successful step, which constituted the invention in suit, was to roll the tubing in a star shape; that is to say, to bring the sides together. By this means, the tube was corrugated or deformed, and its bore was reduced to six or eight thousandths of an inch. The result was satisfactory to the government, for it was found that instruments made with the new tubing were sufficiently accurate.

The claims of the patent may be divided into four groups: (1) Claims 1 and 22, which specify corrugated capillary tubing, or capillary tubing deformed to reduce the bore thereof. (2) Claims 4 and 28, which specify substantially capillary metallic tubing for thermometers and the like, having its wall formed of three or more longitudinally extending inwardly curved sections united at their adjoining edges. (3) Claims covering the instrument in combination with the tubing; for instance, claims 20 and 22, which specify substantially a distance type thermometer having a bulb, an indicating gage, and corrugated capillary transmission tubing connecting the bulb and gage. (4) Claims 8, 9, 10, 17, and 21, covering the method and machine for manufacturing the tubing. Claims in groups 1, 2, and 4 belong in the first case, relating to the patent for the tubing; and the claims in group 3 belong in the second case, relating to the instrument.

It will be observed that the essential element of both applications is capillary tubing of the smallest possible bore, made by distorting or corrugating the exterior walls. Both applications were rejected by the Patent Office, as not involving invention, mainly because of the patent to Bourdon of August 2, 1852, and the above-mentioned patent to Hodgkinson of 1913. The Bourdon patent is well known, and his invention has become a standard part of instruments for measuring the pressure and temperature of fluids. It relates specifically to a pressure gage used in connection with the distance type of thermometer. The gage is connected with the capillary tubing at one end, while the bulb of the thermometer is connected at the other. Bourdon shows that, if a thin metallic tube is flattened and then bent from a straight line, it has the property of changing its form considerably when exposed to variations of internal or external pressure. An increase of internal pressure tends to bring the tube to a straight cylindrical form, and the degree of the pressure is indicated by the amount of alteration in the form of the tube. If the transverse section of the tube is circular in form, it will not so operate, because the pressure is the same on all of the walls in every direction. In other words, the tube will not move. But when the tube is flattened and distorted, the internal pressure is unequal, and tends to restore the tube to the cylindrical form, whereby the tube acts as a spring, the movement of which may be communicated by levers to the stylus on the dial.

Bourdon said that an infinite variety of forms may be given to the tube, provided the section differs from the circle and the form from the straight line, and he showed in his patent drawings the cross-section of tubes distorted in various shapes, any one of which would be useful for his patent. Among them are tubes having in section a Y-shaped, or star-shaped, appearance; the latter being similar in outline to the corrugated capillary tube disclosed by Schlaich. But it must be borne in mind that the purpose which Bourdon had in mind, and which he accomplished, was quite different from that conceived by Schlaich. Bourdon's purpose was not to secure the smallest bore possible of capillary tubing, and he did not distort his tube with this end in view. He changed the cylindrical cross-sectional area of the tube, and bent it, not for the purpose of reducing the size, but in order to produce a spring which would respond by change of form to the pressure of the fluid contained therein. Schlaich, on the other hand, proposed to make a tubing smaller than any which had been made before, and it was essential for his purpose that the tubing should not respond by change of form to internal pressure.

The requirements of installation in aeroplanes involve the bending or coiling of tubing. If it responds by change of form to internal pressure, the registering device is thereby affected, and errors in the measure-

ment of the temperature result. The evidence shows that the bore of the Schlaich tube is so small that it does not have this effect. Consequently, notwithstanding certain pictorial resemblance, the difference between the two is so marked that the Schlaich tubing will not perform the Bourdon result. Moreover, as will hereafter appear, the Bourdon tube is not of capillary dimension.

The Patent Office was particularly influenced by the Hodgkinson patent and certain statements contained therein, which the record now shows for the first time to be incorrect. The case now before the court is therefore not the same as that presented to the Patent Office and the Court of Appeals. The inventor Hodgkinson was produced as a witness, and made it clear that certain averments in the specification of his patent, which were quoted and mainly relied upon in the Patent Office, were not in accordance with the facts. As already pointed out, Hodgkinson described the use of a capillary tube connecting the recording mechanism with the distant receptacle or room whose temperature is desired. He reduced the error consequent upon the use of a long connecting tube by the insertion of a wire therein. He said in his specification: "The upper or active end of the capillary tube may or may not contain the wire as this, being flattened in cross-section as shown in Fig. 6, it is possible to accurately gage the area of this part of the tube."

The Patent Office quoted this statement as a pertinent and conclusive disclosure, and concluded (1) that Hodgkinson intended to flatten capillary tubing; (2) that he did this in order to reduce the bore; and (3) that as a result thereof, he could accurately gage the area of the tube. It was thought that the upper end of the Hodgkinson tube was the same as the Schlaich tube, and that the two inventors differed only in the method by which the capillary tubing was brought about. As a matter of fact, it appears from other portions of the Hodgkinson specification, and more particularly from his testimony, that that which is referred to in his specification as the "upper or active end of the capillary tube" is nothing more than the Bourdon tube or spring, which was in common use in Hodgkinson's time at the registration end of distance thermometers.

The invention consisted in reducing the cross-sectional area of the capillary tubing, which connected the Bourdon spring with the bulb of the thermometer. The Bourdon tube itself, as used by Hodgkinson, was not a part of the capillary tube. It was separate

therefrom, and was much larger in dimension, since it was required to be of sufficient internal diameter to receive the end of the capillary tube within it. Its diameter was about $\frac{7}{32}$ of an inch, while the inside diameter of the capillary tube was about $\frac{21}{1000}$ of an inch. In other words, the inside diameter of the Bourdon tube was approximately 10 times the diameter of the capillary tube, and the cross-sectional area about 100 times as great. The Schlaich tubing, on the other hand, has a cross-sectional area less than one-third of the area of the capillary tube of Hodgkinson.

The suggestion in the quoted sentence from the Hodgkinson patent, that it was possible to accurately gage the area of the active part of the tube, referred to the practice of forcing air pressure through the tube while it was being rolled out, so as not to go so far in the operation as to completely close the passage in the coil, thereby rendering it useless. While Hodgkinson pointed out that the area of a capillary tube may be reduced by inserting a wire, he did not show that the same result could be carried to a much further degree by deforming or corrugating the tube. The contrast between the size of his smallest tube and that of Schlaich emphasizes the extent of the latter's contribution to the art.

The Patent Office makes the further point that the question in issue hinges upon the word "capillary." The broadest claim 1 calls merely for a corrugated capillary tube. The Standard Dictionary defines a capillary tube as one "with so fine a bore that the rise or fall of the liquid in it by capillary attraction is perceptible to the eye." It is said that the Bourdon tube falls within this definition, and therefore anticipates the claim, since it is distorted in at least one of the illustrations into a star shape. But it is manifest that Schlaich had in mind, as the meaning of the term "capillary tubing," not merely tubing capable of capillary attraction, but tubing of the minutest bore. In order to make this position the more clear, and therefore to show the limitations of the patent, the Schlaich specification was amended at the trial, so as to show that the term is intended to define tubing of the smallest capacity, in which the bore is of hairlike dimensions.

Furthermore, it is stated in the amended specification that the term "capillary" should be used in its accepted meaning, as designating the pressure-transmitting tubing connecting the bulb of the instrument with the Bourdon spring, which is so shaped as to

change its form in response to changes in internal pressure, and is therefore necessarily of much greater than capillary dimensions. These amendments are in line with other well-recognized definitions of the term "capillary," as hairlike, such as that contained in the Century Dictionary. It seems to be clear that the invention has been so limited to tubing of the finest bore by these amendments that the monopoly of the patent will not be extended to other structures outside its proper scope, such, for instance, as the corrugated or deformed boiler tubes disclosed by the Serpollet patent of 1895 and other structures of the prior art.

[1] The Patent Office also contends that the question is not whether the tubing is smaller than previous tubing, but whether the corrugated tubes of Bourdon, especially those which were star-shaped, or Y-shaped, in cross-section, would suggest to one skilled in the art the corrugated smaller tubing. It is said that the new tubing differs from the old merely in size, and is therefore not patentable. But the case does not fall within the general rule illustrated by the line of cases which hold that there is no invention involved in converting a large machine into a small one, or the reverse. That which is involved in the patents in suit is not merely a reduction in size. The new tubing is effective only by reason of its size. The reduction in the cross-sectional area of the tubing converted failure into success, and involved something more than a matter of degree. A result of this kind may constitute invention. Toledo Computing Scale Co. v. Computing Scale Co. (C. C. A.) 208 F. 410; Edison Electric Light Co. v. United States Electric Light Co. (C. C. A.) 52 F. 300.

The real question is whether Schlaich's discovery should have been obvious to persons skilled in the art. It is of assistance in deciding this question to realize that the demand for very small capillary tubing had existed for a considerable period, and efforts had been made to produce it. The testimony before the court in the case at bar is convincing on this point. Archibald C. T. Isaac, a mechanical engineer employed by the General Electric Company, who has had considerable experience in flying and in the manufacture, amongst other things, of distance reading thermometers, testified that he had never come in contact with capillary tubing corrugated, as provided by Schlaich. John M. Mackenzie, a manufacturer of small tubing, testified that in 1917 the smallest available tubing had an internal diameter of fifteen thousandths of an inch, and that the trade had no means of supplying tubing of smaller dimensions before Schlaich's discovery. An effort had been made to manufacture it, without success. It could be made in short pieces, but not in longer commercial lengths, because the opening could not be kept free.

Edmond Hodgkinson, the inventor above referred to, filed his application for patent in 1910. He recognized the desirability of getting the bore of a capillary tube as small as possible, and discovered a rather cumbersome method of inserting a wire. It never occurred to him to adopt the much more simple, and, as it turns out, effective, way of reducing the bore by corrugation or distortion of the tubing. All of these men answer to the description of persons skilled in the art, but the solution of the problem was not obvious to them.

The particular utility of the tubing in connection with distance thermometers is also clearly shown by the evidence. The smaller cross-sectional area makes possible a great increase in the accuracy of the instrument. Amongst other advantages is the fact that alcohol may be used, instead of mercury, which renders available copper or bronze, instead of steel, the use of which involves corrosion and harmful magnetic effects. Corrugation of the tubing eliminates the cost of the filler wire, as well as the expense of putting it in. Corrugated tubing is of greater flexibility, and the bore is not subject to being closed by sharp bending. It has gone into wide use in the manufacture of the instruments, and is generally accepted as solving the difficulty in the Army and Navy and elsewhere.

[2, 3] The conclusion is that the claims of the patents covering corrugated capillary tubing, per se, tubing for thermometers and the like, and the instrument incorporating the tubing and the methods of manufacture, should be granted. There are, however, two claims in the first patent, relative to methods of manufacture, which were rightfully refused, to wit, claims 17 and 21. These call for a combination or pair of rolls, shaped to deform the tubing fed between them, and casing-holding means mounted adjacent to said rolls. They are not limited to capillary tubing. They were rejected by the Patent Office, on the ground that they did not involve invention, in consideration of certain prior patents, to wit, the patent to Koenig, No. 819,143 of 1906, the British patent to Holland of 1908, and the patent to Parcells of 1916. Since these claims are not confined to tubes of capillary size, it is the con-

clusion of the court that their rejection by the Patent Office was correct.

Decrees in accordance with this opinion will be signed.