### DEVIN et al. v. WESTERN WHEELED SCRAPER CO.

### No. 6342.

Circuit Court of Appeals, Sixth Circuit.
June 29, 1933.

Rehearing Denied Oct. 13, 1933.

Merrell E. Clark, of New York City (Frank R. Higley, of Cleveland, Ohio, and John W. Farley, of Memphis, Tenn., on the brief), for appellants.

Scott Fitzhugh, of Memphis, Tenn., and John L. Jackson, of Chicago, Ill. (John A. Dienner, of Chicago, Ill., on the brief), for appellee.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Suit by Western Wheeled Scraper Company, appellee, against E. A. Devin, a user, for infringement of patent No. 1,706,099, March 19, 1929, to Benbow and Green for a "dump wagon." The claims involved are 9, 11, 14, 15, and 17 to 23, inclusive. The Euclid Crane & Hoist Company intervened as a defendant and counterclaimed for infringement of two patents, only one of which, to wit, No. 1,752,056, March 25, 1930, to Armington & Armington, for a "dump trailer," is here involved.

The case was referred to a special master, who found that both patents were invalid for lack of invention. Upon exceptions to the master's report, the District Court held the Benbow and Green patent, No. 1,706,099, valid and infringed, and the Armington & Armington patent, No. 1,752,056, invalid for lack of invention. Defendants appealed.

Both of these patents relate to tractor-drawn dump wagons of the bottom dump type equipped with "caterpillar treads," commonly called crawlers. For many years before 1925 appellee was engaged in building and selling vehicles for hauling earth, stone, etc. The Athey Truss Wheel Company was a manufacturer of "truss wheels" of special design, utilizing the track-laying or "caterpillar wheel" construction and intended for use upon vehicles transporting heavy loads over soft ground. As a result of a conference between officers of these two companies appellee began in 1925 to build and sell a bottom dump wagon equipped with Athey crawlers. To this end it directed its engineers, James D. Benbow and James B. Green, to design a wagon that could be used with the Athey truss wheels. These engineers visited the Athey factory and not only saw the Athey truss wheels, but also some of the Athey Cane Carts, a type of vehicle which had been built by the Athey Company since 1917. These carts were principally used in Cuba to haul sugar cane and were to some extent in demand in Florida and Louisiana in logging operations. They were equipped with Athey truss wheels, but were not dump carts.

The actual achievement of Benbow and Green was to convert the Athey cane cart into a dump wagon, which they did by removing the frame from the cart and substituting therefor a wagon bed, with two sets of bottom dump doors, one in front and one in the rear of the axle. The doors opened from the center and were operated by a chain and ratchet mechanism. Upon the wagon so designed patent No. 1,706,099 was issued. Claim 11 is typical. It may be analyzed as follows: A dump wagon comprising (1) a frame; (2) a bed supported thereon; (3)

bottom dump doors hinged at the sides of said bed for swinging outwardly and downwardly to the sides of the dump load; (4) a pair of axle brackets secured to said frame intermediate of the ends thereof; (5) reinforcing means extending between said axle brackets, each of said brackets comprising a downwardly and outwardly extending arm; (6) axles carried by said arms; (7) self-laying track units pivotally supported on said axles at opposite sides of the wagon; and (8) the axle brackets and their reinforcing means being arched substantially to clear the load, dumped from a substantially full bed.

All of these elements considered separately are admittedly old. Appellee insists, however, that the invention is found in the combination; but the combination itself is old, as shown in the Athey cane cart, except that the cane cart is not a dump cart. The combination is also present in Bunn, No. 923,943, 1909, a patent for a dumping wagon, with the exception that the rear wheels of the Bunn wagon were ordinary wagon wheels instead of the crawler type.

We do not regard it as the exercise of inventive genius to substitute a wagon bed with bottom dump doors for the frame of the Athey cane cart. Mr. Green testified that he did not know that any of the problems were very serious ones. The Benbow and Green wagon operated as a load-carrying vehicle just as had the Athey cane cart, and its bottom dump doors performed the same function as conventional bottom dump doors had formerly performed and with the same result. The wagon was an improvement no doubt [see Ford Motor Co. v. Ohio Stamping & Engineering Co., 56 F.(2d) 807 (C. C. A. 6)], but it did not embody invention. The case must be ruled by Keene v. New Idea Spreader Co., 231 F. 701, 709 (C. C. A. 6), and by Newcomb, David Co., Inc., v. R. C. Mahon Co., 59 F.(2d) 899, 901 (C. C. A. 6), and the cases there cited.

We are not unmindful that the Benbow and Green wagon was commercially successful, but commercial success alone will not turn the issue in favor of patentability. We think its success was due not only to the fact that it was an improvement, but to increased activity in levee work upon the Mississippi and the consequential demand for some such character of vehicle.

The Benbow and Green wagon attracted the attention of Arthur P. Armington, vice president of appellant, the Euclid Company. He saw one at work on a Mississippi levee and noted what he considered to be certain disadvantages in its construction. He thought that the use of front trucks afforded an opportunity for the wagon to "jackknife" or buckle when following a tractor down steep grades; that the two pairs of doors dumping separately or together with their winding mechanism were complicated, and that as an element of safety the device that operated the doors should be located at the rear instead of at the front of the wagon. Following his suggestions, his company built and sold the Euclid wagon of the cart type, and designed to be hitched directly to the tractor by means of a drawbar. By using a modified form of arched axle, Armington was enabled to use one pair of dump doors instead of two. His idea was that a single pair of full length doors would effect a better balance in the load of a wagon having a single axis than would two sets of doors. It is somewhat difficult to understand just how this would be accomplished. However, Armington applied for a patent upon this wagon, which was granted as Armington & Armington, No. 1,752,056, March 25, 1930. Its two claims are the basis of the counterclaim of appellant. Claim 2 is printed in the margin.[1]

In view of what has been said herein touching the Benbow and Green patent and wagon, we do not regard it necessary to enter into a detailed discussion of the Armington claims. It is perhaps sufficient to say that the claims are for combinations each element in both of which is old, and that the combination evidences no more than the skill of a mechanic charged with the knowledge of prior achievements in the art.

So much of the decree of the District Court holding the Benbow and Green patent, No. 1,706,099, valid and infringed will be reversed, with directions to dismiss the bill as to that patent, but in all other respects it will be affirmed.

[1] "2. In a vehicle of the class described, a rigid open frame, an open-bottom container carried by said frame to dump therethrough, doors for the dumping opening extending the full length thereof and mounted to swing downwardly and laterally to dumping position, arched axle means intermediate the ends of the frame and comprising a member located above the doors and extending across the frame through the sides thereof with ends projecting therebeyond, brackets sleeved on the ends of said member and secured to the frame and extending downwardly below the elevation of the container, and stub shafts extending outwardly from the lower extremities of said brackets and carried by endless tread running gear."