## WOLFF et al. v. JORDAN MARSH CO.
### No. 3897.

District Court, D. Massachusetts.
Jan. 29, 1935.

Arthur J. Cohen and Herbert A. Baker, both of Boston, Mass., for plaintiffs.

George N. Goddard, of Boston, Mass., for defendant.

BREWSTER, District Judge.

This is an infringement suit, brought by the patentee and a licensee, alleging infringement of letters patent of the United States relating to gentlemen's and children's underwear. The defenses are anticipation, noninvention, and noninfringement.

### Statement of Facts.

1. On Wolff's application, dated March 6, 1929, letters patent of the United States No. 1,787,098 issued December 30, 1930. The invention covered an improvement in undergarments for men, known as "union suits." The object of the invention was to add to the comfort and convenience of the wearer at all times.

2. The alleged invention consisted in novel features of construction, combination, and arrangement of parts of the garment.

The suit was made by assembling a frontal section, a back section, and a posterior section consisting of two parts secured medially by a seam giving adequate fullness to the seat of the garment. The advance over the prior art, according to Wolff's claim, resided in the combination in the undergarment of two distinctive features, (1) a depending flap or tail, which constituted a part of the back section, sewed on its sides to the frontal section for the whole length of the flap; and (2) a hem, or casing, along the upper edge of the posterior section in which was introduced an elastic band, thereby obviating the need of any buttons or any other fastening device for the purpose of holding the posterior section in the proper position. The casing and band were also stitched to the side seams.

3. The grant of the patent is set forth in only one claim, which reads as follows:

"A union suit comprising front, back and posterior sections, the back section terminating above the crotch portion of the front section and stitched along side edges of the front section for the full depth of the back section, the posterior section overlapping the lower portion of the back section and stitched along its side edges to side edges of the front section and the overlapped portion of the back section, a marginal casing being formed across the upper end of the posterior section for the full width thereof, and an elastic band within said casing stretched and having its ends secured at the ends of the casing, said casing being secured at its ends with seams connecting the front and back sections and free from the back section for the remainder of its length."

4. According to the file wrapper, Wolff's claim was twice rejected on Kline, United States 1,182,386 (1916) and Kassap, United States 1,610,792 (1926). Both references related to undergarments, for men, of the type known as "union suits." The former shows a depending flap, or tail, extending downwardly nearly to the crotch, but no elastic band or other means of holding in place the posterior section. The inherent elasticity of the material was relied upon to hold this section in its proper position. The construction, therefore, was not feasible for woven fabrics, and it did not prove satisfactory due to the tendency of knitted fabrics to stretch after wear.

The Kassap patent shows all the elements of the patent in suit except that the depending flap was not fastened at the sides and only a part of the hem of the posterior section carried an elastic band. Buttons were, therefore, employed as additional means for holding the posterior section and the tail in normal position when worn.

When the advantages of the flap fastened to the main body of the garment and the means of holding the posterior section in place were stressed, the Patent Office granted the application.

5. At the trial, the defendant cited two other patents, namely, Greenwald, United States 1,097,425 (1914) and Jaslow, United States 1,395,115 (1921). The latter of these patents is not pertinent to the art involved as it does not relate to undergarments. Its only purpose was to show that the idea of inserting elastic in a casing or hem was not new. The Greenwald patent shows a depending flap for a short distance, but a posterior section held in place by buttons rather than by means of an elastic band. This reference does not come as near the Wolff invention as does the Kassap patent, above referred to.

6. Upon the granting of his application, Wolff sought to interest manufacturers in his invention, but was not successful until he entered into negotiations with the plaintiff Craig-Musgrove, Inc., or its predecessor, which resulted in a license. Subsequently, the William Carter Company, one of the manufacturers who had previously rejected Wolff's idea, has been licensed to manufacture and sell under the patent. Other licenses have also been granted. The garments, especially those designed for children's wear, have met with commercial success. The licensees have manufactured and sold large quantities of garments according to the teachings of Wolff's patent, and the volume of the sales has substantially increased since the discovery of an elastic tape of durable quality, thus eliminating one of the objections that manufacturers had made to Wolff's construction. It is in evidence that the manufacturers licensed under the patent have advertised widely their products, but upon all the evidence I find it to be a fair inference that the popularity of the undergarment especially for children, constructed according to the patent in suit, was due to the economy and simplicity of its construction and the convenience to the wearer.

7. The defendant sells a garment designed for children's wear, manufactured by the Elliott Manufacturing Company of Manchester, N. H. The garment is cut out

of knitted fabric which comes to the mill in tubular form. There is no assembling of the back and front sections of the garment. The flap, or tail, however, is not an integral part of the back portion, but is stitched to it along its lower edge and also along the side edges, similar to the Wolff construction. It also has the other feature of the patent in suit, namely, the hem with elastic band and no buttons. I find this garment infringes.

### Conclusions of Law.

■ I conclude that the defense of anticipation has not been sustained. The earlier patents failed to disclose fully and precisely the essential features of the Wolff patent. None show the same combination of elements. Conceding that all of these elements found in Wolff's invention were old, he was the first to bring them together and produce an article of underwear which, by enhancing the utility, comfort, and convenience of the garment, marked a step in advance over the prior art. It could not be said that Wolff made a great contribution or that he solved any intricate or pressing problem, but, in my opinion, the contribution was enough to overcome the defense of anticipation based upon patents set up by the defendant. Carnegie Steel Company v. Cambria Iron Co., 185 U. S. 403, 22 S. Ct. 698, 46 L. Ed. 968; Folberth Auto Specialty Co. v. Mayo-Skinner Mfg. Co. (D. C.) 292 F. 883, 890; Winget Kickernick Co. v. Kenilworth Mfg. Co. (C. C. A.) 11 F.(2d) 1, 2.

■ It is settled rule that a prior patented article does not anticipate if modifications are necessary in order to accomplish the results achieved by the invention. Topliff v. Topliff et al., 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658; Allis-Chalmers Mfg. Co. v. Columbus Elec. & Power Co. (C. C. A.) 19 F.(2d) 860, 863; Babcock & Wilcox Co. v. Springfield Boiler Co. (C. C. A.) 16 F.(2d) 964, 969; Tashjian v. Forderer Cornice Works (C. C. A.) 14 F.(2d) 414, 415.

■ Undergarments, made according to the teachings of the several patents cited by the defendant, would not meet the requirements of the Wolff garment without modification in more than one particular. The references nearest to the patent in suit were considered by the Patent Office and were deemed not to anticipate. A patent regularly issued is presumed to be valid until that presumption is overcome by convincing evidence of error. The burden is upon the party setting up the defense of anticipation to make good that defense. Radio Corporation v. Radio Engineering Laboratories, 293 U. S. 1, 54 S. Ct. 752, 55 S. Ct. 66, 78 L. Ed. 1453, 79 L. Ed. ——.

■ The more difficult question presented in this suit is whether this final step of Wolff's over the prior art involved the exercise of inventive genius. It is evident that the tendency of the courts is towards liberality when dealing with improvements in wearing apparel. If the improvement results in increased utility or a greater degree of comfort for the wearer, it has been deemed adequate to sustain the validity of the patent, even though the improvement constitutes only a slight advance in the art. Van Heusen Products, Inc., v. Earl & Wilson (D. C.) 300 F. 922; Gotham Silk Hosiery Co. v. Artcraft Silk Hosiery Mills (D. C.) 1 F. Supp. 643; Governform Corporation v. Terry (C. C. A.) 4 F.(2d) 894; Franklin Knitting Mills v. Gropper Knitting Mills (C. C. A.) 15 F.(2d) 375; Franc-Strohmenger & Cowan v. Arthur Siegman, Inc. (C. C. A.) 27 F.(2d) 785.

■ While it may be true that commercial success alone is not enough to turn the issue in favor of the invention [Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 495, 23 L. Ed. 952; Devin et al. v. Western Wheeled Scraper Co. (C. C. A.) 66 F.(2d) 631], if the article patented possesses the characteristics of novelty and utility, the presumption of validity arising from the grant is strengthened by such commercial success and is more difficult to overcome [The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154; Minerals Separation, Ltd., v. Hyde, 242 U. S. 261, 270, 37 S. Ct. 82, 61 L. Ed. 286; Trane Co. v. Nash Engineering Co. (C. C. A.) 25 F.(2d) 267; Frick Co. v. Lindsay (C. C. A.) 27 F.(2d) 59; Trico Products Corporation v. Apco-Mossberg Corporation (C. C. A.) 45 F.(2d) 594, 598; Sheridan et al. v. Silver-Brown Co. (D. C.) 4 F. Supp. 759, 761].

■ Popular reception of the patented product will, however, turn the scale in favor of the validity of the patent if the other facts leave the question of invention in doubt. The Barbed Wire Patent, supra; Frick Co. v. Lindsay, supra.

■ The commercial success undoubtedly was due in part to the campaign of advertising as well as to the discovery of durable elastic fabric, but it was due also to the in-

herent merit of the combination conceived by Wolff. Conceding that the discovery of the new elastic fabric contributed to the success of the Wolff undergarment, it was he who pointed the way for its use. The simplicity of the combination is no criterion by which to measure the extent of the inventive genius of the discoverer in conceiving and reducing to practice his invention. Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 S. Ct. 652, 53 L. Ed. 1034; Diamond Rubber Co. of N. Y. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Kurtz v. Belle Hat Lining Co. (C. C. A.) 280 F. 277, 281; Sheridan et al. v. Silver-Brown Co., supra; Frick Co. v. Lindsay, supra, at page 61 of 27 F.(2d).

■ So far as the evidence discloses, Wolff succeeded where others failed. The Kline garment does not appear to me to be feasible. The inference from the testimony is that none of the earlier patents resulted in products which were extensively or profitably manufactured and sold. The difference between Wolff's and the earlier garment was the difference between success and failure. This is evidence of invention. Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; The Barbed Wire Patent, supra; Toledo Computing Scale Co. v. Computing Scale Co. (C. C. A.) 208 F. 410, 413; Schlaich v. Robertson, 26 F.(2d) 681, 685.

■ The fact that those manufacturing the defendant's garment have seen fit to imitate Wolff when evasion was easy is also strong evidence of the extent and merit of Wolff's contribution to the art. Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939; Gandy v. Main Belting Co., 143 U. S. 587, 12 S. Ct. 598, 36 L. Ed. 272; Topliff v. Topliff, supra; Krementz v. S. Cottle Co., 148 U. S. 556, 13 S. Ct. 719, 37 L. Ed. 558; Diamond Rubber Co. of N. Y. v. Consolidated Rubber Tire Co., supra; Sheridan et al. v. Silver-Brown Co., supra.

■ My conclusion, therefore, is that the plaintiffs' patent cannot be defeated because of its failure to show invention.

The defense of noninfringement is not sustained. The defendant cannot escape the charge of infringement by proving that its garment is cut from knitted fabric which comes in tubular form instead of woven fabric which requires stitching between the front and back sections of the garment. The patentable novelty did not reside in the operation. The novel features were the flap or tail sewed along the side edges to the front section and the elastic encased in a hem along the upper edge of the posterior section, and the entire absence of buttons or other fastening means to hold the posterior section in position. Both of these features are embodied in the defendant's garment. The patent relates to a result and not to a process by which that result was obtained, and the end result of the operation adopted by the manufacturers of defendant's garment is a "Chinese Copy" of the patented garment and infringes. It is the mental concept and not its embodiment in a physical aggregation that constitutes the invention and is the subject of the patent. United States v. Dubilier Condenser Corporation, 289 U. S. 178, 188, 53 S. Ct. 554, 77 L. Ed. 1114, 85 A. L. R. 1488.

I rule, therefore, that the patent in suit is valid and infringed.

A decree consistent with this opinion may be submitted for approval.