## FRIEND et al. v. BURNHAM & MORRILL CO.

### No. 922.

District Court, D. Maine, S. D.

May 12, 1930.

Bradley, Linnell & Jones, of Portland, Me., R. J. Mawhinney, of Washington, D. C., and Strout & Strout, of Portland, Me., for plaintiffs.

Francis J. V. Dakin, of Boston, Mass., for defendant.

PETERS, District Judge.

This is a bill in equity for the infringement of letters patent No. 1,496,458, issued on June 3, 1924, to the individual plaintiffs for a method of preparing canned baked beans. A motion to dismiss was made by the defendant under Equity Rule 29 (28 USCA § 723) on the ground that the patent was void on its face for the want of patentable novelty and invention. "While patent cases are usually disposed of upon bill, answer, and proof, there is no objection, if the patent be manifestly invalid upon its face, to the point being raised on demurrer, and the case being determined upon the issue so formed. We have repeatedly held that a patent may be declared invalid for want of novelty, though no such defense be set up in the answer." Richards v. Chase Elevator Co., 158 U. S. 299, 15 S. Ct. 831, 832, 39 L. Ed. 991.

It is true that the patent carries a presumption of validity and that a demurrer, or motion to dismiss, should only be sustained in very clear cases; but it is also true that in such cases much trouble and expense may be saved the parties by a decision of the points raised without calling witnesses, especially where, as here, the court does not seem to require any other information than that contained in the letters patent supplemented by such matters of common and general knowledge as are within judicial cognizance. Lange v. McGuin (C. C. A.) 177 F. 219.

Judge Taft, as a circuit judge, said in American Fibre-Chamois Co. v. Buckskin Fibre Co. (C. C. A.) 72 F. 508, 511: "The rule is now well settled that a defendant to a patent infringement bill may raise the question on demurrer whether the alleged invention, as disclosed by the specifications of the patent, is devoid of patentable novelty or invention. * * * It is also well settled that, in considering the question of the validity of a patent on its face, the court may take judicial notice of facts of common and general knowledge tending to show that the device or process patented is old, or lacking in invention, and that the court may refresh and strengthen its recollection and impression of what facts were of common and general knowledge at the time of the application for the patent by reference to any printed source of general information which is known to the court to be reliable, and to have been published prior to the application for the patent."

Looking at the letters patent in this case, we see that the patentee alleges that he has invented a new and useful improvement in the method of preparing canned baked beans, and in his specifications he describes in detail and justly praises old-fashioned, New England baked beans, dwelling especially on the fact that the custom of baking them in the oven for eight or ten hours with pork and so forth has been found, through long use, to add considerably to their flavor. He says that canners have previously tried canning beans without much success, their failure having been due to the fact that the beans were not baked but parboiled or stewed, the principal cooking they received being after they were placed in the cans, "and then subjected to a sterilizing of from two to three hours at a moderate temperature of from 212 to 240 degrees Fahrenheit. The result is to all intents and purposes stewed beans lacking both the color and flavor of baked beans. * * * The pork is practically uncooked and contributed nothing to the flavor. The product in all

cases lacks the delectable flavor of baked beans."

The product was generally known as "canned beans" or "canned pork and beans." What amounted to canned stewed beans were common, as alleged, at the time of the application, but canned baked beans had not been tried. He says in substance that the object of his invention is the production of canned baked beans as a commercial product, having all the good qualities of the old-fashioned baked beans.

The patentee alleges that his method comprises three steps: "First, the baking of the beans; second, the canning of the baked beans while hot; and, third, the sterilizing of the cans."

Each of the three steps is described. The first step consists in baking the beans, which is a detailed description of preparing and baking beans as they have been baked in New England from time immemorial. This is not, of course, claimed to be a new process.

The second step of the process as described consists in canning the beans when baked and while hot; he describes a method of keeping them hot when taken from the oven by transferring them to a large kettle which is kept heated by a jacket of hot water around it, the kettle being kept near to the filling table and a sealing machine of any suitable construction so there can be no delay in putting the beans in the cans while hot.

The third step in the process consists in sterilizing the beans in the cans, which is done in the same way as above described in the case of the canned stewed beans; that is, they were sterilized by heat, as is usual in such cases and commonly known.

As a matter of fact, a fourth step in the process is described, although not mentioned by the patentee as a separate step. This consists in turning cold water on the cans at the end of the sterilizing so as to cool them off and prevent further cooking inside. He says that he has found California pea beans are best adapted for baking and canning, but that yellow-eyed and kidney beans may be also used, or any other beans like the pea beans; larger beans being apt to break down and not come out whole. He says that as a result of this method baked beans as good as home baked beans are produced which can be kept indefinitely and prepared quickly, the flavor and taste being "due in a large measure to the fact that the pork, which is cooked with the beans, is subjected to a very high degree of heat for a considerable period, so that the fat therefrom thoroughly permeates and flavors the beans"; in other words, to the old-fashioned method of baking before being canned. The patentee says that he has described the preferred form of his invention and method, but it is to be understood that he is not to be limited to the precise method of procedure described, or the particular means used to secure the desired results, since various other means may be employed for these purposes within the purview of the invention.

The claims embrace all four steps of the process with different arrangements. Claim 5, apparently the broadest in its scope, covers the first two steps only, baking the beans and placing them in cans before they are cooled materially. Claim 8 covers all four steps, baking the beans, canning them while hot, sterilizing them with heat, and cooling them with water. In all of the claims, however, there is the feature of placing the beans in the cans "while at a temperature of approximately one hundred and eighty degrees Fahrenheit."

If there is any discovery at all disclosed, it must be in this feature of temperature. All other steps are old, well-known, and described by the applicant in his specifications as previously known, and if the language referred to covering the temperature of 180 degrees means nothing more nor less than heat, then that step is old and well-known to everybody, as illustrated by the housewife's method of canning preserves while hot. That nothing more than this is disclosed appears from a consideration of the claims in connection with the specifications. The applicant says that doing the work of placing the beans in the can rapidly, as it should be done and as we have all seen it done in the case of home-made preserves, results in keeping the material hot, and he has "found from exhaustive tests that the temperature at the time of sealing ranges from 182 to above 190 degrees Fahrenheit." In describing his second step the applicant says: "Although the beans are maintained in a jacketed kettle at a temperature between 200 and 212 degrees Fahrenheit and there was necessarily a slight lowering of this temperature in the placing of the beans in the cans before they can be sealed, yet no deleterious results have ever been noted in beans canned above 180 degrees. It is undoubtedly true that baked beans can be canned at temperatures below 180 degrees Fahrenheit, and it may be that at a temperature of 165 degrees Fahrenheit, or even lower, practical results

may be secured. In view of these conditions I wish it to be understood that in using the phrase 'approximately one hundred and eighty degrees Fahrenheit' in the following claims, I desire to cover a range of temperature sufficiently high to secure the desired results."

Here we have a definition of what is meant in the application by the language "approximately 180 degrees Fahrenheit." It means hot enough to avoid the undesirable results of canning beans cold, when the applicant says they are apt to turn sour.

In the light of the explanation of what is meant by the temperature and what it is for and its effect, I can find nothing beyond the well-known and common step of putting preserves in a can when hot.

All the elements of the process being old and well-known, and no special claim of any discovery being made in connection with any one of them, the invention must rest upon the combination. All elements may be old and operate only in the old way, and yet there may be something new in the combination. What is the result that the inventor claims? It is simply the admirable, old-fashioned, baked beans that the inventor started with. He says, "As the result of my method, baked beans having all the characteristics, qualities, appearance and flavor of home baked beans may be produced and placed upon the market."

The patentee refers to previous failures to secure results comparable with those obtained by the housewife. It appears from his statement above that these failures were due to not baking the beans before canning. In other words, nobody had canned baked beans. Stewed beans only had been canned. But it is not shown that there had been any difficulty in the canning of baked beans if one desired to do so. It appears now that baked beans, like other vegetables or fruits, do in fact respond to the ordinary steps employed for canning foodstuffs, and the patentee has not varied any of these steps in any minute particular.

The language of the court in Brown v. Piper, 91 U. S. 37, at page 41, 23 L. Ed. 200, is pertinent: "The answer is, that this was simply the application by the patentee of an old process to a new subject, without any exercise of the inventive faculty, and without the development of any idea which can be deemed new or original in the sense of the patent law. The thing was within the circle of what was known before, and it belonged to the public. No one could lawfully appropriate it to himself, and exclude others from using it in any usual way for any purpose to which it may be desired to apply it."

The patentee has applied an old process to another subject. It was formerly applied to stewed beans, and he now applies it to baked beans, an old product. There is no improvement claimed in the quality of the beans. He makes Boston baked beans available in canned form.

As pointed out by the defendant, the Packing Company Cases, 105 U. S. 566, 572, 26 L. Ed. 1172, are very much in point. The patent in suit involved three claims: One, cooking meat by boiling; two, pressing meat while warm into a box or case; three, sealing the box or case. The court held that there was nothing new in the process described in the patent. "The process of cooking meat, lobsters, and other articles of food by boiling, and, while warm from the cooking, compacting them in cans, which are then sealed up air-tight, was practiced in many places and for many years before his application. * * * We are clearly of opinion that a change in the mode of cooking the meat from broiling, roasting, or steaming to boiling, all the other parts of the process remaining unchanged, cannot be called invention, and it does not entitle the party who suggested the change to a patent for the process. 'All improvement is not invention, and entitled to protection as such. Thus to entitle it, it ought to be the product of some exercise of the inventive faculties, and it must involve something more than what is obvious to persons skilled in the art.' "

It would appear obvious to any one, schooled in the art or otherwise, that if stewed beans had been canned, as described by the applicant, baked beans could also be preserved that way.

It seems to me clear, from a study of the letters patent alone, that there is no patentable novelty or invention shown and that the patent is therefore void.

The motion of the defendant is sustained.