KANNÉ & BESSANT, Inc., v. EAGLELET METAL SPINNING CO., Inc., et al.

District Court, S. D. New York.
March 21, 1931.

Walter H. Pumphrey, of New York City, for plaintiff.

Munn, Anderson & Munn, of New York City (Albert J. Clark, of New York City, of counsel), for defendants.

SYMES, District Judge.

This bill in equity alleges an infringement of letters patent No. 76,347, an ornamental design for lamps, granted September 18, 1928, to Alexander R. Kanné and assigned to the plaintiffs, Kanné & Bessant, Inc. After the suit was begun, the plaintiff and the defendant Arthur A. Victor, doing business under the name of the Victor Manufacturing Company, reached a settlement, evidenced by a consent decree, and the case has gone forward against the remaining defendant, the Eaglelet Metal Spinning Company.

This design is described in the patent as "a new, original and ornamental design for a lamp," and the claim is for "the ornamental design for a lamp as shown." Manufacture and sale by this defendant of a large number of lamps, one of which is in the record as an exhibit, is admitted, leaving as the controverted questions the validity of the suit patent and the alleged infringement by the defendant.

The design disclosed by the patent may be described as a round, bulbous-shaped stand for a table lamp, upon which is mounted a short, thin, vertical stem, which acts as a holder for the lights and shade, but is no part of the patent. The patentee says his design consists of three elements, the neck, the shoulder, and the body. The neck is comparatively small and narrow, the lines being almost vertical, gradually widening down to the junction with the shoulder. This part widens out rapidly into a rounded, curved shoulder at the widest point; the lines then drop almost vertically, slightly tapering in to the flat bottom or base. The completed article can be made in one piece, but it is cheaper to make it in three parts separately and join them together. The patentee testifies the design is intended to give an impression of squattiness. This is obtained by superimposing the narrow neck, which is comparatively short, upon the much wider and higher shoulder and base. Whatever pleasing impression the article creates results from the design; the surfaces being plain and free from any ornamentation.

The patentee states that at the time he developed his idea he was aware that in the prior art there were hundreds of articles, lamps, bottles, and vases of innumerable forms, shapes, etc., varying only according to the specific diameter of the elements and the softness of the lines or the contour of the body. He claims nothing new in respect to the three elements discussed, and that the only difference between his design and the prior art is in the dimensions, lines, and form; that, if the elements were designated according to neck, shoulder, and body, the neck would be longer or shorter; the difference in the shoulder would be in its slope, and in the width and in the size of the body.

The plaintiff's catalogue, in evidence, discloses that it manufactures a great variety of lamps. The one in question is designated "Colonial Water Bottle." Plaintiff's testimony is that in this particular design they traced the Colonial period, which was much in vogue at that time—hence the name. It denies, however, that it is a copy of a so-called Colonial water bottle. The patentee was evasive, however, when asked whether or not this name was chosen because it had a significance when used in connection with any design that simulated an old-fashioned Colonial water bottle.

It is established that the plaintiff sold to the trade about 600 of these lamps over a period of three years, and that the defendant's product, when put on the market, very materially lessened the demand for plaintiff's article.

The defendant's product has practically the same neck, the same rounded, slender shoulder, with the bulge form and the lines gradually tapering to the base. Both products sometimes have a narrow bead at the junction of the shoulder and the body. This is not a mechanical necessity, however, but is used to create an optical illusion, emphasizing the impression of squattiness.

In Graff, Washbourne & Dunn v. Webster et al. (C. C. A.) 195 F. 522, it is said that the virtue of a design patent resides in the manner in which it is assembled, since it is the design as a whole, and the impression it makes on the eye, that must be considered; that the infringing design need not necessarily be a Chinese copy; it is sufficient if the similarity is such as would deceive an ordinary observer,

giving such attention as a purchaser usually gives. So there can be no question that the defendant's design, complained of, is for all practical purposes the same as the plaintiff's, and constitutes a direct infringement.

■ What is the law applicable to this situation: The statute last amended in 1902 (Rev. Stats. §§ 4929, 4933, tit. 35 USCA § 73) protects "any new, original, and ornamental design for an article of manufacture, not known or used by others in this country before his invention," etc.

The Supreme Court in Gorham Mfg. Co. v. White, 14 Wall. 511, 20 L. Ed. 731, has held that this act was intended to encourage the decorative arts and protect appearance rather than utility. What is protected is that intangible thing that gives a peculiar or distinctive appearance to the manufacture; the idea being that the giving of a new and original appearance to a patented article may enhance its salable value, and thus be of service to the public. It is the appearance, whether the result of peculiarity of configuration or of ornament alone, or both, that constitutes the contribution to the public which the law protects.

■ The test of identity of design is the sameness of appearance, so mere difference of lines in a drawing, a greater or smaller number of lines, or slight variations in configuration, if insufficient to change the effect upon the eye, will not destroy the substantial identity. It is the eye of the ordinary observer, and not the expert, giving such attention as a purchaser usually gives, that is the test. If the resemblance is such as to deceive such an observer, inducing him to purchase one, supposing it to be the other, the first one patented is infringed by the other.

"Infringement of a design patent is not to be determined by a close comparison of the two articles; but the test is whether the ordinary observer would purchase one, believing it to be the other."

"A patentee, having a design patent with a written specification relating to an entirely new form of article, is entitled, not only to the exact design shown in his drawing, but also to protection against the making and marketing of articles which contain the dominant features of the design described in the specification." Ashley et al. v. Weeks-Numan Co., 220 F. 899 (C. C. A. 2d), Judge Rogers.

■ The object of the statute is to encourage the decorative arts, and a design which merely pleases the eye is a proper subject for a design patent, regardless of utility. The-

berath v. Rubber & Celluloid Harness Trimming Co. (C. C.) 15 F. 246, at page 250. That is to say, a design patent must be not only new and original, but ornamental as well. Ornamentation implies beauty, the giving of a pleasing appearance. Design patents must, however, meet certain tests applicable to mechanical patents, and it is held (Knapp v. Will & Baumer Co. [C. C. A.] 273 F. 380) that the subject-matter must be novel and must clearly indicate an exercise of the inventive faculties. Both are essential and necessary.

Novelty means that the thing must not have been known to any one before, and mere novelty of form is insufficient. O'Reilly v. Morse, 15 How. 62, 14 L. Ed. 601. So that the mere shaping of an article of manufacture to a standard form or shape that is known to everyone does not constitute novelty. For instance, novelty cannot be predicated upon the making of candles square instead of round. Knapp v. Will & Baumer Co., supra.

Design patents stand on as high a plane as utility patents, and require the exercise of as high a degree of the inventive faculties. Perry v. Hoskins (C. C.) 111 F. 1002; Myers v. Sternheim (C. C. A.) 97 F. 625. In Strause Gas Iron Co. v. William M. Crane Co. (C. C. A.) 235 F. 126, page 131, it is said: "The test for invention is to be considered the same for designs as for mechanical patents; i. e., was the new combination within the range of the ordinary routine designer?"

See, also, Smith v. Whitman Saddle Co., 148 U. S. 674, 13 S. Ct. 768, 37 L. Ed. 606.

"Nor is there invention in taking an object or ornamentation in one art and using it in a non-analogous art. There is nothing new and original about such a design. The design law protects a new and original design, not the thought which results in applying the design from one art to another." Walker on Patents, vol. 1, p. 53.

Applying these principles to the case before us, what do we find? The patentee claims an ornamental design for a lamp. That means that the design when embodied in the lamp must to the ordinary intelligent observer produce a conscious impression of attractiveness and beauty, and that it is suitable for a lamp. In addition, the æsthetic taste of such an observer must recognize novelty; that is, that he has never seen the design before. A mere difference from anything he is familiar with is not sufficient. The impression created should be new and distinct from any previous mental photo-

graph that the observer recalls. The mind must say to itself, "I have never seen that design before."

Frankly, I do not get that impression from a study of the design patent when compared to the previous state of the art. We may observe that ornamental lamps, electric and otherwise, have always been in general use in the household.

The court, in the exercise of its common knowledge, which it may call to its service in a .patent case, Richards v. Chase Elevator Co., 158 U. S. 299, 15 S. Ct. 831, 39 L. Ed. 991; Boldt Co. v. Turner Bros. Co. (C. C. A.) 199 F. 139; Friend et al. v. Burnham & Morrill Co. (D. C.) 40 F.(2d) 662, cannot fail to note that the arts of all past periods and civilizations have been searched by the prior art in question for new ideas. Examples of Greek, Roman, and Egyptian art abound, and copies from the so-called Empire, Directoire, Colonial, Chippendale periods, etc., as well as of water bottles, jugs, metal and earthen vessels, etc., from the most primitive to the highest types, are suggested by the exhibits before us, and the art generally.

The impression sought to be created in the suit design is one of pleasing bulk or squattiness. The exhibits embody the same idea; i. e., a similar neck, the greatest width at the same height above the base, speaking comparatively, with the lines dropping almost vertically from the shoulder, tapering gradually together into the flat base. See the bottles in Defendant's Exhibit 6. One of the vases shown in Defendant's Exhibit 4 also illustrates this principle, and it is suggested by Defendant's Exhibits 2, 5, and 3. The same type of curve is found in most, if not all, whether designated "Early American, Chinese," etc. Plaintiff's catalogue calls it "Colonial Water Bottle." This would imply that it is a copy, and to be recognized as such. Lacking external ornamentation, plaintiff must rely solely upon originality and beauty of outline. This must be demonstrated beyond any doubt. Boldt Co. v. Turner Bros. Co., supra. The catalogue demonstrates that one skilled in the art could, without the exercise of inventive genius, take most any one of the designs shown in the catalogue or exhibits, and with slight changes produce most of the others. As stated in Mygatt v. Schaffer (C. C. A.) 218 F. 827, at page 835, quoting Mr. Justice Bradley in Atlantic Works v. Brady, 107 U. S. 192, 2 S. Ct. 225, 27 L. Ed. 438: "It was never intended * * * that a

monopoly should be granted for 'every shadow of a shade of an idea.'"

It would seem no easy task to invent a new lamp design, differing from the present state of the art to the degree required by law.

In conclusion: the plaintiff's design does not meet the test suggested in Matthews & Willard Mfg. Co. v. American Lamp & Brass Co. (C. C.) 103 F. 634. Using old elements, the patentee, perhaps, has produced a pleasing impression. It lacks, however, the merit of originality, and to the "intelligent general observer" has the appearance of designs previously produced.

In regard to the other points raised, it is only necessary to say that a patent may be declared invalid for want of novelty, even though such defense be not set up in the answer. Richards v. Chase Elevator Co., supra; Friend et al. v. Burnham & Morrill Co., supra.

The bill will be dismissed.

Findings of fact and conclusions of law agreeable to these views may be submitted.