## In re RECKFORD.

### Patent Appeal No. 3135.

Court of Customs and Patent Appeals.

Jan. 23, 1933.

Philip Mauro and Reeve Lewis, both of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claim 14, the only one in appellant's application for a patent for an alleged invention relating to improvements in rubber eraser attachments for lead pencils.

The appealed claim reads as follows: "An article of manufacture consisting of an integrally formed ferrule whose wall is approximately concentric throughout to a common axis and which comprises an annular shoulder at the middle portion thereof, a pencil receiving portion of relatively small diameter extending from said shoulder in one direction and an eraser receiving portion of substantially larger diameter extending from said shoulder in the opposite direction; a pencil one extremity of which fits within said pencil receiving portion of said ferrule, being closely embraced by the wall thereof and permanently and immovably secured therein; and an eraser of substantially larger diameter than said pencil secured within and closely embraced by the wall of said eraser receiving portion of said ferrule and extending substantially beyond the outer extremity thereof."

The references are:

Brauns, 814,899, March 13, 1906.
Handly, 897,530, Sepember 1, 1908.
Tregoning, 977,762, December 6, 1910.
Antler, 1,248,988, December 4, 1917.

The appealed claim defines appellant's ferrule as being integrally formed, with walls approximately concentric throughout to a common axis, and comprising "an annular shoulder at the middle portion thereof, a pencil receiving portion of relatively small diameter extending from said shoulder in one direction and an eraser receiving portion of substantially larger diameter extending from said shoulder in the opposite direction." One end of the pencil fits into the receiving portion of the ferrule, where it is permanently and immovably secured. The eraser, secured in the eraser-receiving portion of the ferrule and extending substantially beyond its outer end, is substantially larger in diameter than the pencil.

The patent to Brauns discloses a lead pencil having a ferrule, which consists, generally, of a nonrotatable cap securely and permanently attached to the pencil. The outer end of the cap is closed and enlarged to form an annular head or shoulder. Mounted upon the nonrotatable cap is a rotatable sleeve, provided with an annular shoulder at approximately its middle portion which abuts against the shoulder formed by the head of the nonrotatable cap. A rubber eraser, which, from the drawings, appears to be of slightly greater diameter than the pencil, is screwed into the outer end of the rotatable sleeve.

The patent to Handly discloses a pencil of the ordinary type, having a ferrule permanently and immovably secured to the pencil, and an eraser of the same diameter as that of the pencil.

The patents to Tregoning and Antler were cited in the decision of the Primary Examiner, because, he said, they disclosed erasers substantially larger than the pencils to which they were attached. They were not referred to by the Board of Appeals.

The patent to Tregoning relates to eraser tips for pencils and means for securing them in position. It appears from his specification that the purpose of the patentee was to so construct the eraser, and the device by which it was secured to the pencil, that, when the eraser became worn, it might be removed, "reversed to present another portion (for use) and again secured in place." In order to carry out the object of the invention, the patentee provided an eraser "having a lateral collar or projection intermediate its ends, con-fined within and upon the upper end of a resilient socket adapted to be secured in place upon the end of a pencil, and a hollow flanged ring or ferrule secured removably upon the upper end of the socket and adapted to confine the collar or lateral projection on the rubber body between it and the upper extremity of the socket."

It is evident from the patentee's specification that his purpose was to provide an eraser that would last approximately as long as the pencil to which it was attached, and, in order to accomplish this purpose, he provided a rather complicated structure.

The patent to Antler discloses an adjustable eraser holder for pencils, so constructed that, as the eraser becomes worn, it may be adjusted, and, when necessary, replaced. It was designed to be detachably connected to a pencil so that when desired, a new pencil could be substituted. The patent discloses the end of the eraser inserted in the holder to be rectangular in shape, the outer or erasing end being beveled or wedge shaped, and of larger diameter than the pencil. The purpose of the patentee was to provide an eraser holder of longer life than either an eraser or a pencil.

The Primary Examiner stated that, in view of the references, the enlargement of the eraser receiving end of the ferrule, in order to permit the attachment of an eraser of substantially larger diameter than the pencil, was only a change in proportion or degree "not productive of a different result," and not involving invention. He further stated that the annular shoulder of the ferrule, between the portions of large and small diameters, was nothing more than an ordinary "reducing coupling, well known in pipes and tubing."

The Board of Appeals, Pierce, Examiner in Chief, dissenting, affirmed the decision of the Primary Examiner holding: First, that all applicant had done was to "mount the sleeve * * * of Brauns' device upon the pencil in the manner suggested by Handly;" and, second, that the enlargement of the eraser receiving end of the ferrule disclosed in the patent to Handly, in order that a larger eraser might be used, was devoid of invention.

It appears from the evidence of record that the problem confronting those engaged in the business of manufacturing and selling pencils, and it appears from appellant's specification that the problem confronting him, was to provide an eraser "adapted to furnish a maximum surface for erasing written or other matter with a minimum effort," and of such form and proportions that its maximum

wear would approximate that of the pencil, and, for the accommodation of such eraser, a nonadjustable ferrule, simple in construction, producible at low cost, and in such form that it would not interfere with the proper use of the pencil to which it was permanently attached.

The trade had been offered complicated structures. It demanded a simple one. Appellant met that demand with a device—nonadjustable, integrally formed, simple in construction, producible at low cost, commercially practicable, and adapted to accommodate an eraser of such form and size that its wear will approximate the maximum wear of the pencil to which it is attached—which, by virtue of its own merits, has become so popular that many of the largest producers of lead pencils in the United States have adopted it. It appears, therefore, that appellant's device is not only novel, useful, and commercially successful, but is of such character as to command the respect of the purchasing public and of appellant's competitors as well.

We are unable to agree that the solution of the problem confronting appellant was as simple as stated by the tribunals of the Patent Office. Neither of the references referred to by the Board of Appeals—Brauns and Handly—anticipates the invention defined by the appealed claim. Furthermore, those references do not suggest, either separately or in combination, appellant's novel structure, nor the useful results obtained therefrom. It is true, as stated by the Board of Appeals, that appellant's device is a simple one. However, when considered in the light of its accomplishment and the state of the prior art, its simplicity is the determining factor that brings us to the conclusion that the exercise of the inventive faculties was required to produce it, and that it was not obvious to one of ordinary mechanical skill. In the case of Potts & Co. v. Creager, 155 U. S. 597, 15 S. Ct. 194, 199, 39 L. Ed. 275, the Supreme Court, among other things, said: " * * * The apparent simplicity of a new device often leads an inexperienced person to think that it would have occurred to any one familiar with the subject; but the decisive answer is that, with dozens and perhaps hundreds of others laboring in the same field, it had never occurred to any one before. The practiced eye of an ordinary mechanic may be safely trusted to see what ought to be apparent to every one. As was said by Mr. Justice Bradley, in [Webster] Loom Co. v. Higgins, 105 U. S. 580, 591 [26 L. Ed. 1177]: 'Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. * * * ' "

The quoted language of the Supreme Court has particular application to the issues in the case at bar.

For the reasons stated, the decision is reversed.

Reversed.