## SIX–WAY CORPORATION v. McCURDY & CO., Inc.

No. 1861.

District Court, W. D. New York.

Aug. 8, 1935.

Charles W. Parker and Max D. Farmer, both of Buffalo, N. Y., for plaintiff.

Mann, Strang, Bodine & Wright, of Rochester, N. Y., and Pennie, Davis, Marvin & Edmonds, of New York City, for defendant.

KNIGHT, District Judge.

This is a suit brought by the Six-Way Corporation against McCurdy & Company, Inc., for infringement of United States patent No. 1,890,358, issued to plaintiff December 6, 1932, for improvements in a pillow or cushion and the infringement of United States design patent No. 90,747, issued to plaintiff September 26, 1933, for an ornamental design for a pillow.

The parties have stipulated that the plaintiff is the owner of the entire title to both of said patents and that on December 27, 1933, prior to the filing of the bill herein, defendant sold the certain pillow manufactured by Charles Bloom, Inc., which pillow, as charged, embodies the invention of and infringes said patents in suit.

The defendant denies infringement, alleges invalidity of the two patents on the ground of want of novelty and invention, ambiguity in the claims, and anticipation by prior patents and prior publications. Defendant also asserts that the design patent is invalid because it does not show an ornamental structure, and also because it is included within the disclosures of mechanical or utility patent No. 1,890,358.

### Patent No. 1,890,358.

Consideration will first be given to the issues raised as to patent No. 1,890,358. The claims of the patent No. 2 and No. 3 are the only ones involved. Claim 1 includes an adjustable stay extending through the pillow to variably limit the bulging of the end walls and soften or compress the pillow.

The invention relates to pillows or cushions adapted for use to provide a comfortable support or rest for the "back, head, or other portion of a person while reading or reposing." The objects of the invention, so far as pertinent here, are stated to be: "to provide a pillow or cushion of the sort mentioned * * * of novel form and construction adapted, by using it in different positions, to provide a comfortable support for the head, * * * of the user in different, desired recumbent * * * positions."

Claim 2 reads: "A pillow comprising a case formed of freely flexible sheet material, and filled with relatively soft, pliable, elastic material, said pillow as filled being relatively soft, pliable and elastic, substantially triangular in transverse cross section, of substantially pillow length, and having rectangular side faces connecting the triangular ends, the two shorter edges of each triangular end being nearly but not equal in length and at least approximately one foot in length, and including between them an angle of about a right angle, whereby each of the three side faces will provide a supporting face of substantial proportions and width, and the pillow will provide a supporting surface at any of a plurality of different inclinations to the horizontal, depending upon which of its side faces the pillow is resting upon."

Claim 3 is in effect the same as claim 2, except that it recites that the two shorter edges of each triangular end include between them "an obtuse angle of slightly more than 90 degrees, * * * the obtuse dihedral angle of the pillow insuring an approximately right dihedral angle after the pillow yields by forces acting thereon in a direction tending to close the obtuse dihedral angle."

There can be no question that defendant infringes. The plaintiff's pillow, plaintiff's Exhibit No. 4, meets the specifications in claims 2 and 3 of this patent. Plaintiff's Exhibit No. 1, a pillow which it is stipulated was manufactured by Charles Bloom, Inc., and sold by the defendant after the issuance of plaintiff's patent, is a practical duplicate of plaintiff's pillow in size, form, the inclination of the angles of the triangular end, and Kapok filler, save as to the inclusion of the stay set forth in claim 1 of the patent. These two exhibits

736

are as near alike in every respect, save covering (to use an old and familiar expression), as "two peas in a pod." They are, as the term is often used, "Chinese" copies, one of the other. If one were to alternate the coverings on the two pillows, they would be indistinguishable. These diagrams of these two pillows, Plaintiff's Exhibits 1 and 4, clearly sustain the conclusion defendant infringes:

Plaintiff's Exhibit 1

Plaintiff's Exhibit 4

Does this patent show novelty and invention?

 Pillows and cushions in various forms and applied to various uses have been known for centuries at least. "Invention" means something new, novel, and of utility. The simplicity of the product does not deny patentability. Many things simple in construction have proved of great value to industry and science. The records of the Patent Office doubtless will disclose hundreds of thousands of patents issued which involve structures or articles or compositions of even greater simplicity than this patent. Looking backward it is easy to see what might have been foreseen. Every prior art patent set up in the answer shows the truth of this statement. Further than this, each of these relates to pillow or cushion construction of some sort. The mere fact that an invention relates to a device which has simplicity as its characteristic should not militate against the validity. "But the law has other tests of the invention than subtle conjectures of what might have been seen and yet was not. It regards a change as evidence of novelty, the acceptance and utility of change as a further evidence, even as demonstration." Diamond Rubber Co. v. Consolidated Rubber Co. (Grant Tire Cases), 220 U. S. 428, 31 S. Ct. 444, 447, 55 L. Ed. 527; Silver-Brown Co. v. Sheridan et al. (C. C. A.) 71 F.(2d) 935; Kurtz v. Belle Hat Lining Co., Inc. (C. C. A.) 280 F. 277; Douglas-Pectin Corp. v. Armour & Co. (C. C. A.) 27 F.(2d) 814; H. D. Smith & Co. v. Peck, Stow & Wilcox Co. (C. C. A.) 262 F. 415; In re Reckford (Cust. & Pat. App.) 62 F.(2d) 842; Wolff v. Jordan Marsh Co. (D. C.) 9 F. Supp. 516. The newness and the novelty of this patent are in the form and shape which permit the use in six different positions. The pillow is formed so as to lie on any one of its three side faces as a base. These diagrams show just these positions in which it may be used:

It will be observed this new and novel result in the use of a pillow is obtained by the angles of the sides of the pillows or cushions. That a useful result was obtained cannot be denied. The record in the Patent Office shows that the application was reviewed with great care. The claims were rejected twice because of prior art patents. After further exhaustive briefing of the claims and the pointing out of the distinctions from the prior art patents, cited by the Patent Office, the patent was granted. The granting of the patent is prima facie evidence of its validity and imposes a burden which must be overcome by one alleging invalidity. Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939; Artcraft Silk Hosiery Mills, Inc., v. Gotham Silk Hosiery Co., Inc. (C. C. A.) 72 F.(2d) 47. The presumption of validity in the instant case is strengthened by the record of the Patent Office.

Evidence of the newness of the invention, its novelty and its utility, is shown by the public demand for the patented article immediately following its introduction to the market. Commercial success is a strong factor in determining patentable novelty. Gross v. Frank (C. C. A.) 293 F. 702; Franc-Strohmenger & Cowan v. Arthur Siegman, Inc. (C. C. A.) 27 F.(2d) 785; Mt. Vernon Car Mfg. Co. v. Pressed Steel Mfg. Co. (C. C. A.) 291 F. 321; In re Reckford (Cust. & Pat. App.) 62 F.(2d) 842. The record discloses that plaintiff's licensee within a period of approximately two years and a half sold 51,000 of these articles. In addition, Bloom, Inc., alone sold upwards of 16,000 of them in the same period, and various other manufacturers put out many of this same type of pillow. It is apparent that some time within the year 1932 many people became suddenly conscious of the offering of a new type of pillow or cushion particularly adapted for a multiple of uses. It was not the old two-sided pillow nor the round or angular bolster. It was different. It is sufficient answer to the comparison made by defendant of the number of these pillows made and sold as compared with all the pillows made and sold, to say that these pillows were to a large extent a luxury and these sales were made in lean years of sales. The presumption from the grant of the patent is strengthened by the commercial demand. Wolff v. Jordan Marsh Co. (D. C.) 9 F. Supp. 516; Earnshaw Knitting Co. v. William Carter Co. (D. C.) 9 F. Supp. 910; Stevens v. Carl Schmid, Inc. (C. C. A.) 73 F.(2d) 54, certiorari denied 55 S. Ct. 548, 79 L. Ed. ——; Langton Co. v. Cont. Con. Corp., 25 U. S. T. Q. F. 54. It is my opinion that plaintiff's article showed new, novel, and useful purposes and was patentable.

Numerous patents and publications have been produced with the purpose to show anticipation. Of these, Haas 885,243, Richter (German) 9,948, and Willson (British) 12,663, Bobrick 1,222,175, were considered by the Patent Office on the application herein. Malarkey 1,107,633, Doucet, French patent 501,865, and patent to Meinecke & Hogan 804,750, were not cited in the Patent Office. Meinecke et al., British, 12,108, cited in the Patent Office, evidently refers to a pillow showing unequal angles. If the latter was not an anticipation, Meinecke No. 804,750 clearly would not be. Meinecke 804,760 shows a triangular shaped pillow in the shape of a bolster extending the width of the bed or cot. This pillow, however, is not referred to nor included either in the specifications of the patent. The bolster or pillow is not essential to the patent. "Anticipation is not disclosed by a drawing which incidentally shows a similar arrangement of parts, where such arrangement is not essential to the first invention and was not designed, adapted, and used to perform the function which it performs in the second invention, and where the first patent contains no suggestion of the way in which the result sought is accomplished by the second." Munising Paper Co., Ltd., v. American Sulphite Pulp Co. (C. C. A.) 228 F. 700, 703; Topliff v. Topliff et al., 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658.

Haas 885,943 shows two triangular pads intended to be used together to hold the body of a person on an operating table within the wedge formation between the cushions or pads. The purpose intended is foreign to that here. The size of the sides of the angles is not shown nor the thickness. It is not described as to its flexibility or softness. It is not susceptible of all the uses of plaintiff's patent. Bobrick No. 1,222,175 is described as being a "filler brace back" designed to be used in a motor car as a back rest. In shape, size, and use for which intended this has no bearing on plaintiff's patent. Malarkey No. 1,107,683 shows so-called plugs shaped to fit in a mattress to fit a chamber or vessel. No comparison in design or purpose is found here, and it has no relevancy as an anticipation.

738

Richter No. 9,948 may be dismissed from consideration as wholly irrelevant. The patent claim recites this: "A bed bottom consisting of fabric extending in the longitudinal direction of the bed, and connected with the bedstead * * * by means of a tensioning device, the springs being masked by stuffed body similar to a wedge bolster." The so-called bolster "is a head pillow fastened to the fabric strips." Doucet, French patent 501,865, shows a chair convertible into a bed. The specification refers to and the drawing shows what is termed a "bolster." As an illustration of knowledge in the prior art it is no more material than the ordinary and usual pillow used on a bed. Evidently it extends the width of the bed; evidently it is not of the form or it is not usable in the various ways in which plaintiff's patent is usable. Willson No. 12,663 shows what is there termed a "wedge bolster." It is made up of three wedge-shaped constructions, each apparently of the same size, extending together across the width of a medical cot or bed and attached to each other. The specification recites "wedge bolsters and wedge cushions made in one piece are old," and an applicant sought his patent on the single ground that the bolsters are attached as therein indicated. The shape, attachment, and usability in the manner shown and the purpose intended to be effected are entirely different from the suit patent.

I see nothing in any of these so-called prior art patents which anticipate.

The defendant has cited publications in the House Beautiful under date of February, 1930, and in "House and Garden" under date of May, 1931. The first of these publications shows a head rest in the form of what is described as "a triangular cushion." It appears from the description of this cushion or pillow that it was a pillow termed "a triangle pillow with sides of just about equal length." It appears from the description that it was usable as a pillow only on the hypotenuse side of the triangle. In the House and Garden publication there is shown "bolsterlike cushion or filler lying between the seat and the back of a lounge." The lack of adaptability to the purpose of the patent is such that these citations do not support the claim of anticipation. At best the testimony in description of these illustrations is indefinite and contradictory. None of the articles themselves was offered in evidence, and there was no reason assigned why this was so, and there is sufficient reason to believe that the production was within the power of defendant if sufficient effort were made to produce it, or at least the defendant could have explained the reason why they were not produced.

"The question of invention is a question of fact, taking into consideration the entire field of the prior art." Wood v. Peerless Motor Car Corp. (C. C. A.) 75 F.(2d) 554, 556. "Proof of prior user must be 'clear, satisfactory, and beyond a reasonable doubt.'" Cherry-Burrell Corp. v. Dairy & Creamery Equipment Co. (C. C. A.) 75 F.(2d) 60, 62; Wood v. Peerless Motor Car Corp., supra; E. Van Noorden Co. v. Cheney Co. (C. C. A.) 75 F.(2d) 298; Trussell Mfg. Co. v. Wilson-Jones Co. (C. C. A.) 50 F.(2d) 1027.

The patent is sufficiently described. The purpose of the statute requiring the invention to be described in "full, clear, concise and exact terms" is met. The patent specifications clearly show the object of the patent. Claims 2 and 3 describe how that object is met. They show the dimensions of the triangular ends, the shape of the angles formed, the shapes of the several faces, and the material of composition. The degree of flexibility is not specifically stated. That would be a practical impossibility. It is stated as being of greater softness than a mattress. While experiences demonstrate they vary as to softness, this comparison in connection with the other descriptions is sufficient to show what was intended. The length of the pillow also is not specifically stated. Nor was this necessary. It is stated that it is "of substantially pillow length." Pillow length conveys a definite idea of the approximate intended length. Pillows as known and used universally have practically the same length. The specifications together with the claims describe the invention with reasonable certainty and precision and that is all that is required. Any doubt should be resolved in favor of the patentee. Remington Cash Register Co. v. National Cash Register Co. (D. C.) 6 F.(2d) 585. It is only necessary that the structure be described "to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same." Section 33, USC title 35 (35 USCA § 33); Rev. St. § 4888. It meets those requirements.

It is my opinion that patent No. 1,890,-358 is valid and that the defendant infringes.

Design patent No. 90,747 shows the same pillow as to form and composition, except as to the conformation of the faces as described in patent No. 1,890,358 and as illustrated in figure Exhibit 4, hereinbefore set forth.

The design patent shows two drawings of the pillow, one a perspective view and the other an end view. The patent recites: "The pillow has opposite substantially parallel ends each of substantially triangular outline, and side faces extending from one to the other of the ends and each of which is crowned or convexed and of substantially rectangular outline, so that the pillow, when viewed from either end is substantially triangular in shape and when viewed from any side is substantially rectangular in shape. Also, while the several sides of the pillow are of different breadths, the narrowest side is of substantial breadth as compared with the broadest side so that the pillow will have substantial elevation when resting on any one of its sides."

This design patent must stand or fall upon the question of whether the crowning or the convexing of the side faces of the pillow is not only ornamental, but new and original. "To give validity to such a patent there must be originality and the exercise of the inventive faculty." R. E. Dietz Co. v. Burr & Starkweather Co. (C. C. A.) 243 F. 592. "In a valid design patent, there must be originality and novelty, as well as beauty, the test of which is the impression made on the mind, through the eye, of the ordinary observer." Goudy v. Hansen (C. C. A.) 247 F. 782. The material and color of the covering add beauty and ornamentation. It can, however, hardly be said that these are new or novel in the sense required by the Patent Law. Taking out these features of the crowning or convexing of the side faces, there is left the article exactly as described in patent No. 1,890,358.

"The test of invention is the same for design patents as for mechanical patents." Walker on Patents (6th Ed.) vol. 1, § 45. In the instant case patentee has used an article patented by him and added a descriptive form to make it more ornamental. In the configuration of the pillow, there is nothing new or novel. The design shows the ordinary and necessary configuration of the pillow as it has been known in use for a great many years. The purpose in the use of the pillow would be lost without some similar crowning or convexing of its two sides. This shaping of the patented article in question does add beauty and ornamentation. It lacks newness and novelty. Its production involves no exercise of the inventive faculties. Knapp v. Will & Baumer Co. (C. C. A.) 273 F. 380. "Design patents stand on as high a plane as utility patents, and require the exercise of as high a degree of the inventive faculties." Kanne & Bessant v. Eaglelet Metal Spinning Co. (D. C.) 54 F.(2d) 131, 133. In Strause Gas Iron Co. v. William M. Crane Co. (C. C. A.) 235 F. 126; In re Walter (Cust. & Pat. App.) 39 F.(2d) 724; King Ventilating Co. v. St. James Ventilating Co. (C. C. A.) 26 F.(2d) 357; Applied Arts Corp. v. Grand Rapids Metalcraft Corp. (C. C. A.) 67 F.(2d) 428; Walker on Patents, vol. 1 (6th Ed.) § 39 et seq.; Smith v. Whitman Saddle Co. 148 U. S. 674, 13 S. Ct. 768, 37 L. Ed. 606.

For the reasons assigned the design patent must be held to be invalid.

Findings of fact and conclusions of law may be submitted to conform to the foregoing opinion and the same shall be, and be considered to be, as and for a part of this opinion.