**HEYER et al. v. ALLEN ELECTRIC & EQUIPMENT CO. et al.**

**No. 2813.**

District Court, W. D. Michigan, S. D.

March 27, 1939.

Judgment affirmed, 117 F.2d 739.

D. P. Wolhaupter and Emory L. Groff, both of Washington, D.C. (Frank E. Liverance, Jr., and Liverance & Van-Antwerp, all of Grand Rapids, Mich., of counsel), for plaintiffs.

Ralph L. Chappell and Earl & Chappell, all of Kalamazoo, Mich., and Ely & Frye, and Bernard C. Frye, all of Akron, Ohio, for defendants.

RAYMOND, District Judge.

Findings of Fact.

1. The individual plaintiff is a citizen of the State of New Jersey.

2. The corporate plaintiff is a New Jersey corporation.

3. Defendant Firestone Tire & Rubber Company is a West Virginia corporation and a wholly-owned subsidiary of The Firestone Tire & Rubber Company, an Ohio corporation.

4. Defendant Allen Electric & Equipment Company is a Michigan corporation.

5. This is a suit for infringement of design patent No. 95,041 for combined charging and testing apparatus and stock stand, issued April 2, 1935, on application filed November 16, 1934; and also for unfair competition.

6. The patent in suit claims an ornamental design for a combined charging and testing apparatus and stock stand as shown in the patent. The structure consists of a rack or cabinet to hold batteries for charging and testing, and of charging and testing equipment. The cabinet is vertical and of general rectangular form. On the front of the cabinet is a door which serves to conceal the batteries from view and to protect customers from electrical connections. A shelf on the front is provided to hold batteries while being tested. At the top of the stand is a box which contains charging and testing equipment. On the face of this box is an arrangement of circular indicating dials on a sloping panel. Three of the four dials are arranged in a substantially straight or horizontal row while a single one at the left is placed in a lower plane. A knurled formation of knob is arranged below the indicating dials in the center of the sloping panel.

7. Defendants have manufactured and sold two structures both of which are alleged to infringe the patent. Both of these structures consist of generally vertical, rectangular racks or cabinets having simple doors on the front to protect customers from the batteries and electrical connections. At the middle of the door in front of the rack is a shelf and at the top of the rack is an enclosure for the charging and testing equipment. A panel on the front of the enclosure carries the dials which are necessary for use of the charging and testing equipment. Defendants' second structure differs from the first structure in that in the first structure the panel at the front of the enclosed charging and testing equipment is tilted back slightly; in the second the enclosure is a continuation of the rest of the structure. The dials are arranged somewhat differently. In the first structure, three dials are arranged in a line and the fourth dial is arranged downwardly and to the left. In the second structure the three dials are not quite in a straight line and the fourth dial is below these dials and is not set over to the left as far as in the first structure.

8. Prior to 1930, it was customary in battery shops to have separate charging and testing units. A rack or bench was provided for the batteries. No attempt was made to conserve floor space or conceal the batteries or protect the customer. As early as 1927, the Heyer Products Company made a combined charger and bench. The charger was fastened on uprights at the end of the bench which extended back therefrom. In 1928, the Heyer Products Company added testing equipment to this unit.

At about the same time, the defendant Allen Electric & Equipment Company was

making similar equipment. A bench with a single panel on uprights at the end thereof was provided. On the panel the dials were arranged in a manner substantially the same as the dials in the present structure made by the defendant Allen Electric & Equipment Company.

In about 1930, filling stations began to handle batteries and the equipment used had to be condensed in order to provide floor space. It was also necessary to protect the batteries from view and to protect the customers from the batteries. This started a condensation of the battery equipment with reference to floor space occupied and eventually led to a construction which consisted of a vertical rack with a solid panel at the front thereof to conceal batteries on the rack and to protect customers from the batteries and from the charging leads. The charging and testing equipment was mounted at the top of such racks since it took less floor space there and since it was convenient to use in that position. A shelf was provided on the front of the solid panel for supporting a battery during test or for displaying a battery for sales purposes.

This condensation of the equipment followed the general lines here stated until eventually, prior to plaintiff's alleged invention of the structure shown in the patent in suit, a vertical rack substantially identical with the rack shown in the patent in suit with a simple door thereon and a shelf on the front of the door and enclosed charging and testing equipment at the top of the rack was in common use. It was customary at this time to sell the racks either with or without charging and testing equipment and it was common practice to substitute one type of charger or tester for another at the top of the rack.

9. Prior to the alleged invention of the subject matter of the patent in suit, plaintiff had patented the structure shown in patent 89,589 and had placed it on the market. Plaintiff had also sold the structure shown in the abandoned application (Exhibit A).

10. Prior to the alleged invention of the structure of the patent in suit, the General Electric Company had published a circular showing a unit substantially identical with that now made by the defendants. This had also been shown in the publication of December, 1933, "The Battery Man".

11. The prior state of the art is also illustrated by the Westinghouse Electric & Manufacturing Company structure which was substantially the same.

12. The unit shown in the patent in suit does not involve any invention over the prior art. The Westinghouse structure shows a cabinet identical in all material respects with the second structure made and sold by defendants and in this structure the dials were arranged in exactly the same manner.

13. If the patent in suit were to be held valid over the Westinghouse prior art structure, it would have to be so limited that it would not be infringed by either of defendants' structures.

14. The patent in suit displays no invention over the General Electric Company structure. The only difference between that structure and the defendants' second structure is the dial arrangement which was optional. The dial arrangement of the patent and of the defendants' second structure had been used by the defendant Allen Electric & Equipment Company as early as 1930 and it would not involve invention to re-arrange the dials of the General Electric Company structure to correspond.

15. If the patent in suit were to be held valid over the General Electric Company structure, it would have to be narrowed to such an extent that it would not be infringed by either of defendants' structures.

16. The patent in suit involves no invention over plaintiff Heyer's prior art patent No. 89,589.

17. When plaintiff Heyer abandoned the application Exhibit A, he abandoned to the public all invention which he now claims in the patent in suit and the patent in suit cannot have the effect of recapturing the abandoned invention.

18. The appearance of the patent in suit is due to functional features entirely and does not amount to patentable ornamental design.

19. The slight difference in arrangement of dials in the patent in suit from the design shown in expired patent No. 89,589 and in the abandoned application (Exhibit A) is but a colorable variation and does not constitute patentable distinction, and there was no invention involved over the prior art. An ordinary mechanic could have produced the design of the patent in suit from that of expired patent No. 89,589 or the abandoned application (Exhibit A) without exercising invention.

20. In March, 1934, the purchasing department of The Firestone Tire & Rubber Company, an Ohio corporation, wrote to plaintiffs' agent, the Bean Manufacturing Company, asking it to submit battery equipment, which they were then selling and which was manufactured by the Heyer Products Company, together with their literature concerning this equipment.

21. Early in July, 1934, the Heyer Company submitted a full-sized commercially operating unit of the design later covered by the patent in suit, together with specifications of the unit, and quoted prices thereon. Prior to sending this sample, plaintiffs wrote to The Firestone Tire & Rubber Company, of Ohio, a letter stating, "I feel it advisable to go on record at this stage of the game letting you know that we are applying for a design patent on the unit as submitted and that we will give you the first opportunity of using this design. If it turns out that you are not interested, I feel that it should be clearly understood that in event we obtain a design patent that we will not expect you to have this particular design made up for you by anyone else."

22. There were no other conditions attached to the submission of the sample and no other agreement, express or implied, was entered into with reference thereto, nor were there any facts from which a confidential relationship between plaintiffs and defendants could be implied.

23. The sales department of defendant Firestone Tire & Rubber Company approved the sample submitted and it was sent to the purchasing department which, following its usual custom, asked for competitive bids for the supplying of this equipment.

24. After competitive bidding, the Firestone Tire & Rubber Company decided to purchase units from the defendant Allen Electric & Equipment Company, whose bid was approximately $25 per unit under that of the Bean Manufacturing Company who offered the unit for approximately $80.

25. After the business had been awarded to the defendant Allen Electric & Equipment Company, plaintiff Heyer and the Bean Manufacturing Company registered a protest. In this protest which was made to the president of the defendant Firestone Tire & Rubber Company, no mention was made of any conditions of confidence or of any agreements or of any confidential relationship or of any violation thereof.

26. The said Heyer unit was manufactured, sold and used, or caused to be made, sold or used, by defendants, over the protest of plaintiffs during a continuous period, from July or August, 1934, to September, 1935, that is, to a date subsequent to the grant of the Heyer Design patent No. 95,041, which has been pleaded.

27. Figure 2 of plaintiffs' chart, Exhibit No. 7, shows a design of unit submitted by plaintiff Heyer to The Firestone Tire & Rubber Company, of Ohio; figure 3 of the same chart shows the Heyer unit as manufactured by Allen Electric & Equipment Company for said Firestone Tire & Rubber Company; figure 1 of the same chart is a drawing of the patent in suit; and figure 4 of the chart shows the changed design of unit made by Allen Electric & Equipment Company for said Firestone Tire & Rubber Company after notice of infringement was given to Allen Electric & Equipment Company.

28. After the patent in suit was granted, plaintiff Heyer notified both defendants of the issuance of the patent but made no mention of any right to recover for violations of any confidential relationship or conditions of confidence or of any agreement and did not notify either defendant of any alleged claim for such breach until the filing of suit.

29. No one in authority or having apparent authority to bind the defendant Firestone Tire & Rubber Company to a contract made any contract with plaintiffs or either of them.

30. Neither defendant violated any confidential relationship with the plaintiffs.

### Conclusions of Law.

1. Design patent No. 95,041 in suit is invalid and void.

2. Plaintiffs have failed to allege and prove their cause of action for unfair competition.

3. The bill of complaint should be dismissed, with costs to the defendants.

The accompanying findings sufficiently state the facts and the issues. A basic issue has to do with the validity of design patent No. 95,041. In view of the prior art, the court is of the opinion that the patented design lacks both ornamentation and novelty and that its production involved no exercise of the inventive faculties. It is therefore invalid. This conclu-

sion is supported by the following authorities: Elite Mfg. Co. v. Ashland Mfg. Co., 6 Cir., 235 F. 893; Imperial Glass Co. v. A. H. Heisey & Co., 6 Cir., 294 F. 267; Applied Arts Corp. v. Grand Rapids Metalcraft Corp., 6 Cir., 67 F.2d 428; Kanne & Bessant v. Eaglelet Metal Spinning Co., D.C., 54 F.2d 131; Boston Leather Specialty Co. v. Vatco Mfg. Co., D.C., 17 F.Supp. 910; Six-Way Corporation v. McCurdy & Co., D.C., 11 F.Supp. 734.

In the Elite Mfg. Co. case, supra, 235 F. page 896, the following is pertinent, "The production of such a design did not call for an exercise of the creative faculty. Originality is wanting. The beauty of the design is not impressive."

Judge Denison said, in the Imperial Glass Company case supra, 294 F. page 269, "While we do not question that patentable designs may arise from regrouping familiar forms and decorations, yet when all that was done was to take an existing piece of table glassware having these flutes, and substitute a slightly different form of flute already in common use on other articles of domestic table glassware, we are satisfied that there can be no patent monopoly."

In the Kanne & Bessant case, supra, 54 F.2d page 133, it was said, "Design patents stand on as high a plane as utility patents, and require the exercise of as high a degree of the inventive faculties. Perry v. Hoskins (C.C.) 111 F. 1002; Myers v. Sternheim [9 Cir.] 97 F. 625. In Strause Gas Iron Co. v. William M. Crane Co. [2 Cir.] 235 F. 126, page 131, it is said: 'The test for invention is to be considered the same for designs as for mechanical patents; i. e., was the new combination within the range of the ordinary routine designer?'"

■■ Upon the issue of unfair competition, plaintiffs have failed to establish either a confidential relationship or an express or implied contract which would afford a basis for recovery upon such a theory. In the case of Bristol v. Equitable Life Assurance Society, 132 N.Y. 264, 267, 30 N.E. 506, 507, 28 Am.St.Rep. 568, the rule is stated as follows: "Without denying that there may be property in an idea or trade secret or system, it is obvious that its originator or proprietor must himself protect it from escape or disclosure. If it cannot be sold or negotiated or used without a disclosure, it would seem proper that some contract should guard or regulate the disclosure; otherwise, it must follow the law of ideas, and become the acquisition of whoever receives it."

A decree in conformity herewith may be submitted for signature on or before April 1, 1939.